UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRISTOPHER FOSTER,

        Plaintiff,

-against-

DAVID MUIR; ABC WORLD NEWS,

        Defendants.

21-CV-3711 (LTS)

ORDER OF DISMISSAL

LAURA TAYLOR SWAIN, Chief United States District Judge:

    Plaintiff, who is currently incarcerated in the Toledo Correctional Institution in Toledo, Ohio, brings this *pro se* action, alleging that Defendants violated his rights.[1] By order dated May 11, 2021, the Court dismissed the action without prejudice because Plaintiff is barred under 28 U.S.C. § 1915(g) from filing new civil actions *in forma pauperis* as a prisoner unless he is imminent danger of serious physical injury. (ECF 4.) On May 17, 2021, the Court received an amended complaint from Plaintiff, and on May 26, 2021, Plaintiff tendered the $402.00 in filing fees required to bring a civil action in this Court. Accordingly, by order dated May 25, 2021, the Court vacated its prior order of dismissal and judgment and directed the Clerk of Court to reopen this action. (ECF 9.) For the reasons set forth below, the Court dismisses the amended complaint.

## STANDARD OF REVIEW

    The Court has the authority to dismiss a complaint, even when the plaintiff has paid the filing fee, if it determines that the action is frivolous, *Fitzgerald v. First E. Seventh Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000) (*per curiam*) (citing *Pillay v. INS*, 45 F.3d 14, 16-17

---

[1] Plaintiff originally filed this action in the United States District Court for the Southern District of Ohio. *See Foster v. Muir*, No. 1:21-CV-0252 (S.D. Ohio Apr. 26, 2021). By order dated April 26, 2021, Magistrate Judge Stephanie K. Bowman transferred the action to this Court. (ECF 2.)

(2d Cir. 1995) (*per curiam*) (holding that Court of Appeals has inherent authority to dismiss frivolous appeal)), that it fails to state a claim, *Wachtler v. County of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994), or that the Court lacks subject matter jurisdiction, *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999).

The Court is obliged, however, to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

The Supreme Court has held that under Rule 8, a complaint must include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

## BACKGROUND

The original complaint listed Christopher Foster as the Plaintiff, but the caption to the amended complaint instead lists "F.R.E.E. Things Matter, et al." as the sole Plaintiff in this

action.[2] The amended complaint describes F.R.E.E. Things Matter as a registered "entity that advocates for the advocates of individuals with disabilities including but not limited to the special operations that are necessary to ensure that the Federal Government plays a central role in enforcing these advocacy protections, in lieu of [the Americans with Disabilities Act]." (ECF 6, at 1.) Plaintiff is a "member of the board of directors" of F.R.E.E. Things Matter and purports to bring his claims as a class action. (*Id.*)

The following allegations are taken from the amended complaint. The "Defendant(s) Class gave false information in a news report" that Plaintiff asserts violates the New York State and City Human Rights Laws and the Americans with Disabilities Act (ADA).

> The Plaintiff(s) Class noticed a problem in the system when myself, the representative of this Class, and member of the board for [F.R.E.E. Things Matter] became a direct target in severe violations on the basis of disabilities, and from direct experience, also observation of the effect on others around, or the system, or nation as a whole, it because clear that the issue, was and is, bigger than [race], consistent with a larger view, explained in 42 USCS12101(a)(4).[3]

(*Id.* at 2.)

> Plaintiff(s) Class by years, investigating a threat several state official called a "Trump Policy" and once the distinctive 3 USCS301[4] or 28CFR35.190(b)(6)[5] and 35.172(d),[6] policy was uncovered on the basis of origin, extent, and the official(s)

---

[2] Notwithstanding the caption to the amended complaint, the Court uses "Plaintiff" to refer to Mr. Foster unless otherwise noted.

[3] Section 12101(a)(4) is a provision of the ADA stating Congress's finding that "unlike individuals who have experienced discrimination on the basis of race, color, sex, national origin, religion, or age, individuals who have experienced discrimination on the basis of disability have often had no legal recourse to redress such discrimination." 42 U.S.C. § 12101(a)(4).

[4] 3 U.S.C. § 301 authorizes delegation of certain presidential powers and functions to the heads of federal agencies.

[5] 28 C.F.R. § 35.190(b)(6) tasks the United States Department of Justice with implementing ADA procedures in certain state and local governmental agencies.

[6] 28 C.F.R. § 35.172(d) provides that an individual who submits a complaint to a federal agency regarding an ADA violation may file a federal civil action whether or not the agency finds that a violation occurred.

responsible consistent with the Supreme Court's definition of policy made by oral instruction alone, in Opinion of Penbaur v. Cincinnati, 89 L. Ed. 2d 452, 465 (1986), the Plaintiff(s) Class were the first to seek suppression of the insurrection effect on the Nation, before it got worse.

(*Id.* at 2-3.)

The amended complaint references a "fundraiser" established on Facebook for F.R.E.E. Things Matter:

> Weeks after the fundraiser reviewable through Facebook.com/Freethingsmatter came into effect, Foster v. Trump, 2020 U.S. Dist. LEXIS 179243 at its core reasoning, specifically because it was the first case against Trump's insurrection, filed in February 2020, initially, about a year before reaching today's stage, the Defendant(s) directly or indirectly, used commerce in excess of 42USCS12181(1),[7] and 42USCS12203(b),[8] to the extent that notice that repeatedly was circulated by the Defendant(s) class, summarily, explained that Foster v. Trump, was not the first case concerning the Trump insurrection issue, and instead, as of its continues notice or reporting that began on February 16th, 2021, then continued throughout that day and week, the Defendant(s) class provided that [Bennie G. Thompson], was the first to file about the Trump insurrection, thus causing an effect on the Plaintiff(s) class herein, akin to that of Ragin v. Harry Macklowe Real Estate Co., 801 F. Supp. 1213, 1225,[9] because the Plaintiff(s) class had to begin counteracting this false information, investigating how to contact, also contacting Defendant(s) Class, and more work outside of work intended.

(*Id.* at 5.)

---

[7] This provision defines "commerce" for the purposes of the public accommodations section of the ADA,

[8] Section 12203(b) provides that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter."

[9] In *Ragin v. Harry Macklowe Real Estate Co., Inc.*, 801 F. Supp. 1213 (S.D.N.Y. Aug. 25, 1992), *aff'd in part, rev'd in part*, 6 F.3d 898 (2d Cir. 1993), a corporation that provided services with respect to discriminatory housing practices sued a corporate real estate agency for discrimination under the Fair Housing Act regarding its use of exclusively white models in its advertising. Plaintiff here appears to be referring to testimony of a plaintiff in that case that the time she had spent investigating discrimination had interfered with the regular work of the agency. *See id.* at 1225.

Plaintiff alleges that with a fundraiser deadline in late June 2021, "the only way for the Plaintiff(s) Class to counteract the Defendant(s) Class on basis of their false notice, is by the Defendant(s) Class going on T.V. to air a correction stating that it erred in its reporting." (*Id.* at 6.)

F.R.E.E. Things Matter members

> sent emails, and made several calls, etc., only to be hung up on, sent to voicemails with no return call, emails left unresponded, and, summarily, denied an opportunity to participate in violation of 42 USCS12182(c),[10] to the extent that, at this time, even contacting the Defendant(s) Class, to make the corrective report, would not give donors enough time to return or consider donating, before the deadline of June 2021 – later June (2021).

(*Id.*)

Plaintiff's website "received several bad reviews," causing "silent investors" to "turn[] the other way" and for Plaintiff to no longer be able to pay the web-hosting fees. (*Id.* at 7.) Donors are therefore "at confusion as to whether they are donating to the cause of the first case against the insurrection or a false representation." (*Id.* at 8.) This is "akin to the effect discriminatory communication, on an advertisement basis had on the DHC members in [Ragin]." (*Id.* at 8.)

Plaintiff concludes:

> The Defendant(s) Class interference made the fundraiser means of regulating commerce fall to the effect of being withheld directly or indirectly, made the interactive process or opportunity to participate impossible, and directly or indirectly made it so accomplishing the late June 2021, deadline, without an injunction have the effect of denial or at least being withheld from success . . . .

(*Id.*)

---

[10] Section 12182(c) provides that "[n]otwithstanding the existence of separate or different programs or activities provides in accordance with this section, an individual with a disability shall not be denied the opportunity to participate in such programs or activities that are not separate or different."

Plaintiff seeks money damages and injunctive relief, including preliminary injunctive relief.

## DISCUSSION

### A. Claims asserted on behalf of F.R.E.E. Things Matter

The Court must dismiss any claims brought on behalf of F.R.E.E. Things Matter. An association or other artificial entity, such as F.R.E.E. Things Matter, cannot appear *pro se* in federal court; it can only appear with an attorney. *See, e.g., Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 202-03 (1993) (noting that courts do not allow corporations, partnerships, associations, and other "artificial entities" to appear in court without an attorney); *Eagle Assocs. v. Bank of Montreal*, 926 F. 2d 1305, 1308-10 (2d Cir. 1991).

Moreover, as a *pro se* litigant, Plaintiff cannot act on behalf of another. *See U.S. ex rel. Mergent Servs. v. Flaherty*, 540 F.3d 89, 92 (2d Cir. 2008) ("[A]n individual who is not licensed as an attorney may not appear on another person's behalf in the other's cause." (internal quotation marks and citation omitted)); *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998) ("[B]ecause pro se means to appear for one's self, a person may not appear on another person's behalf in the other's cause.").

Plaintiff does not allege that he is an attorney. The Court therefore dismisses any claims brought on behalf of F.R.E.E. Things Matter without prejudice.

### B. Class action

Plaintiff also seeks to have this matter proceed as a class action. Because a nonlawyer cannot bring suit on behalf of others, a *pro se* plaintiff cannot act as a class representative. *Rodriguez v. Eastman Kodak Co.*, 88 F. App'x 470, 470 (2d Cir. 2004) (citing *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998)); *Phillips v. Tobin*, 548 F.2d 408, 412-15 (2d Cir. 1976).

Because Plaintiff is not an attorney, he may not represent any party other than himself. Accordingly, Plaintiff's request that this matter proceed as a class action is denied.

C.  **Claims on Plaintiff's behalf**

The Court dismisses any claims Plaintiff may be asserting on his own behalf. The Court liberally construes Plaintiff's factual allegations and repeated references to the ADA as asserting claims that Defendants discriminated against him based on a disability or failed to accommodate a disability when they refused to correct what Plaintiff maintains was an incorrect statement about who filed the first case regarding what Plaintiff refers to as the "Trump Policy."

The Court construes Plaintiff's allegations as attempting to assert a claim under Title III of the ADA. Title III of the ADA provides that, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

First, Plaintiff fails to allege any facts suggesting that he has a disability as defined by the ADA. *See* 42 U.S.C. § 12102. He instead states that he is a member of the board of directors of F.R.E.E. Things Matter, which he describes as "an entity that advocates for the advocates of individuals with disabilities including but not limited to the special operations that are necessary to ensure that the Federal Government plays a central role in enforcing" the ADA. (ECF 6, at 1.)

Second, although Plaintiff cites Title III, he fails to allege any facts suggesting that Defendant – a network news program and an on-air reporter – meet the definition of a "public accommodation" under the Title III.[11] *See* 42 U.S.C. § 12181(7) (listing twelve categories of

---

[11] Titles I and II of the ADA are also inapplicable to Plaintiff's claim. Title I of the ADA prohibits discrimination in employment, *see* 42 U.S.C. § 12112, and Title II prohibits discrimination on the basis of a disability by state or local governments, *see* 42 U.S.C. § 12132.

entities considered public accommodations including hotels, movie theaters, sales establishments, museums, parks, and schools, among others); *see also Stoutenborough v. Nat'l Football League, Inc.*, 59 F.3d 580, 583 (6th Cir. 1995) (holding that a television broadcast is not a "place" and therefore is not covered by Title III).

And even if Plaintiff *was* disabled under the ADA and Defendants *were* covered by the statute, Plaintiff has failed to allege that anyone, let alone any of the Defendants, discriminated against him on the basis of any disability or failed to accommodate a disability. The Court therefore dismisses any claims under the ADA that Plaintiff may be asserting on his own behalf for failure to state a claim on which relief may be granted.

**D.      Supplemental Jurisdiction**

A district court may decline to exercise supplemental jurisdiction over state-law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Having dismissed the federal claims over which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction over any state-law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'") (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)).

---

Nothing in the amended complaint suggests that Plaintiff was an employee of Defendants or that Defendants are state or local government actors.

### E. Leave to Amend is Denied

District courts generally grant a *pro se* plaintiff leave to amend a complaint to cure its defects, but leave to amend may be denied if the plaintiff has already been given an opportunity to amend but has failed to cure the complaint's deficiencies. *See Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because the defects in Plaintiff's amended complaint cannot be cured with a further amendment, the Court declines to grant Plaintiff another opportunity to amend.

### CONCLUSION

The Court dismisses claims bought on behalf of Plaintiff Christopher Foster for failure to state a claim on which relief may be granted.

The Court also dismisses any claims brought on behalf of F.R.E.E. Things Matter without prejudice.

The Court declines to exercise supplemental jurisdiction over any state law claims Plaintiff may be asserting. 28 U.S.C. § 1367(c)(3).

The Court denies any request for preliminary injunctive relief as moot.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to mail a copy of this order to Plaintiff and note service on the docket.

SO ORDERED.

Dated: July 2, 2021
        New York, New York

                                              /s/ Laura Taylor Swain
                                              LAURA TAYLOR SWAIN
                                              Chief United States District Judge